# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **SPHERIX INCORPORATED** § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. _____ |
| § | |
| **JUNIPER NETWORKS, INC.** § | **JURY TRIAL DEMANDED** |
| § | |
| Defendant. § | |

_____

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Spherix Incorporated ("Spherix") for its Complaint against Defendant Juniper Networks, Inc. ("Juniper"), hereby alleges as follows:

## THE PARTIES

1. Spherix is a corporation duly organized and existing under the laws of the state of Delaware with a principal place of business at 7927 Jones Branch Drive, Suite 3125, Tysons Corner, VA 22102 USA.

2. Upon information and belief, Juniper is a corporation duly organized and existing under the laws of the State of Delaware with a principal place of business at 1194 North Mathilda Avenue, Sunnyvale, CA 94809.  Juniper may be served with process via its registered agent, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

## JURISDICTION

3. This is an action for patent infringement under the patent laws of the United States, Title 35 of the United States Code, arising from Juniper's unauthorized manufacture, sale and/or offer for sale of various products, including, but not limited to, switches for networks,

covered by, and prior to the expiration of, U.S. Patent Nos. RE40467; 6,578,086; 6,130,877; 7,664,123; and 8,607,323.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, including at least 35 U.S.C. § 271 (a).

4. This Court has personal jurisdiction over Juniper by virtue of the fact that Juniper is a Delaware corporation and under the Delaware long arm statute, because Juniper has availed itself of the rights and benefits of this District by conducting business in this jurisdiction, including by promoting its products and services for sale via the internet, which are accessible to and accessed by residents of this District, and because Juniper has also purposefully availed itself of the rights and benefits of the laws of the State of Delaware, having previously submitted to personal jurisdiction in and filed lawsuits in the United States District Court for the District of Delaware.  The exercise of jurisdiction over Juniper would not offend traditional notions of fair play and substantial justice.

## VENUE

5. Juniper conducts business in this District, including providing and promoting products and services which are used, offered for sale, sold, imported into and have been purchased in Delaware, including in this judicial district.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1331, 1338(a), 1391(b), (c) and (d) and 1400(b).

## BACKGROUND

6. This lawsuit asserts causes of action for infringement of United States Patent Nos. RE40467; 6,578,086; 6,130,877; 7,664,123; and 8,607,323 (collectively, the "Asserted Patents"). All of the inventions disclosed and claimed in the Asserted Patents were conceived and created

by inventors that were working for an entity within or related to the Nortel corporate family at the time of the invention ("Nortel").

7. During bankruptcy proceedings many years later, Nortel sold the Asserted Patents, among others, to a consortium of technology companies known as Rockstar Bidco, L.P. Based on a purchase agreement and assignment from Rockstar Consortium US LP, Plaintiff Spherix now owns the Asserted Patents, and has the exclusive right to sue for infringement and recover damages for all past, present, and future infringement.

8. Nortel's history is inextricably intertwined with the origins of telecommunications. Alexander Graham Bell invented the telephone in 1874, for which he received a United States Letters Patent in 1876 (U.S. Patent No. 174,465). The Bell Telephone Company (later AT&T) was formed in 1877. Bell Canada was formed three years later, in 1880. Nortel was formed as the manufacturing arm of Bell Canada in 1895. In its early years, Nortel was instrumental in establishing the Canadian telecommunications industry. By the mid-twentieth century, Nortel had matured into a global research and development powerhouse.

9. Each of the former Nortel employees who is named as an inventor on an Asserted Patent assigned all of their rights in the respective Asserted Patent to Nortel.

10. At its peak in 2000, Nortel had grown to more than 90,000 employees world-wide, including 35,000 in the United States, had market capitalization of nearly $300 billion and had yearly revenues approaching $30 billion. In 2000 alone, for example, Nortel spent nearly $4 billion on research and development involving some 25,000 research and development employees world-wide, including nearly 10,000 in the United States.

11. Nortel had offices world-wide, with over 100 locations in the United States alone.

12. Nortel was an innovator in the telecommunications industry. For example, Nortel was one of the first to envision telecommunications over fiber optics; it led the industry's move to the era of digital telecommunications; it was the first to develop a telephone with the controls in the handset rather than in the base; and it contributed to the development of numerous telecommunications standards and created core technology necessary to implement many of those standards. From 1992 through 2009, Nortel invested more than $34 billion into research and development.

13. Nortel's substantial research and development investments, and the inventiveness of the Nortel technology professionals, directly resulted in Nortel receiving well over 4,200 patents covering wireless, wireless 4G, data networking, optical, voice, internet, service provider, semiconductor and other telecommunications as of July 2011. Nortel made patents a priority and its employees received bonuses for their innovations. Each of the Asserted Patents issued as the result of the inventiveness of Nortel personnel and Nortel's significant research investment.

14. Like many companies in the telecommunications industry, the economic and competitive pressures during the 2000s—including competition from manufacturing operations based in China—resulted in Nortel being forced to restructure, contract in size, and eventually enter bankruptcy. By the end of 2008, Nortel's full-time-employee count had fallen below 30,000, with approximately 10,000 in the United States. Nortel's revenues had fallen to less than $10 billion, resulting in an operating loss of greater than $2 billion.

15. Nortel entered bankruptcy protection in 2009. As part of the bankruptcy, Nortel sold a portion of its patent assets for an unprecedented and widely-publicized $4.5 billion — which was $1.3 billion more than the combined value of all of Nortel's business units that were sold prior to the patent auction. The purchasers were a consortium of leading technology

companies collectively known as Rockstar Bidco, LP.  Among the assets sold to Rockstar Bidco, LP were the Asserted Patents.

16.     Nortel's bankruptcy cost more than 30,000 employees their jobs at Nortel, and left others without pension and life insurance coverage.  Employee pensions were slashed in half when Nortel could no longer meet payment obligations. Some workers lost life insurance or medical benefits when the company's self-funded programs collapsed.  Absent the auction of the Nortel patents, including the Asserted Patents, these funding shortages would have been far greater and their impact far more damaging to Nortel employees.

17.     Rockstar Bidco, LP transferred the patents to Rockstar Consortium US, LP ("Rockstar"), an intellectual property company built on a core of former Nortel technology and business professionals.  Many of Rockstar's employees are former Nortel employees, including former Nortel engineers, managers and attorneys.

18.     Plaintiff Spherix was founded in 1967 as a scientific research company. Spherix's common stock trades on the NASDAQ Capital Market system under the symbol SPEX.

19.     Historically, Spherix has focused on biotechnology research and development.  Its research has led to numerous patents and patent applications relating to diverse innovative biotechnologies such as water purification, biodegradation management, and the use of D-tagatose for food and potentially medical and environmental applications.   Spherix acquired the Asserted Patents from Rockstar.

20.     Spherix has formed a Technology Advisory Board to identify and address market opportunities for innovative technology, including telecommunications technology.  Part of the

purpose of the creation of the Technology Advisory Board is to reward and provide compensation to the inventors of the patents Spherix acquires.

21. Defendant Juniper is one of the world's largest manufacturers and sellers of routing and switching products for high-performance networks. Juniper is headquartered in Sunnyvale, California, but has offices throughout the United States, including Arizona, Colorado, Connecticut, Florida, Georgia, Illinois, Kansas, Maryland, Massachusetts, Missouri, New Jersey, New York, North Carolina, Ohio, Oklahoma, Texas, Virginia and Washington, and the world, including Australia, China, India, Japan, Korea, Taiwan and Singapore in Asia and Belgium, Denmark, France, Germany, Italy, Switzerland and the United Kingdom in Europe.

22. On information and belief, for Juniper's fiscal year ending December 31, 2013, Juniper had revenues of over $2.24 billion for routers and $638 million for switches and an additional over $790 million for services. Similar revenues were reported for Juniper's 2011 and 2012 fiscal years. Juniper's routing and switching products and services represent a substantial majority of Junipers' total revenue for each of those years.

23. On information and belief, Juniper manufactures many of its products at facilities in China, Malaysia, Mexico and Taiwan, and then imports those products into the United States for sale and/or distribution.

24. The scope of Juniper's infringement of the Asserted Patents has been and continues to be substantial. The majority of Juniper's revenue from at least January 1, 2011 until the present is and has been generated by products and services implementing technology that infringes the Asserted Patents. The most recently issued Asserted Patent, U.S. Patent No. 8,607,323, does not expire until August of 2023.

25. Juniper manufactured, sold, offered for sale and/or imported the infringing technology with knowledge of at least some of the Asserted Patents and the relevance of those patents to Juniper's products and services, including Juniper's infringement thereof.

### INFRINGEMENT OF U.S. PATENT NO. RE40467

26. On August 26, 2008, United States Letters Patent No. RE40467 ("the RE467 patent") for "Method and Apparatus for Managing the Flow of Data Within a Switching Device" was duly and legally issued to Randy Ryals, Jeffrey Prince, H. Earl Ferguson, Mike K. Noll and Derek H. Pitcher. All rights and interest in the RE467 patent have been assigned to Spherix. A true and correct copy of the RE467 patent is attached hereto as Exhibit A.

27. Upon information and belief, Juniper has infringed and continues to infringe the RE467 patent. The infringing acts include at least the manufacture, sale and/or offer for sale of products (including, for example and without limitation, Juniper's M Series Routers) that are covered by one or more claims of the RE467 patent. Juniper is liable for infringement of the RE467 patent pursuant to at least 35 U.S.C. § 271 (a).

28. Juniper's acts of infringement have caused damage to Spherix and Spherix is entitled to recover from Juniper the damages sustained by Spherix as a result of Juniper's wrongful acts in an amount subject to proof at trial. Juniper's infringement of the RE467 patent continues to cause damage to Spherix.

29. Upon information and belief, Juniper's infringement of the RE467 patent has been and continues to be willful and deliberate. As a result, Spherix is entitled to enhanced damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**INFRINGEMENT OF U.S. PATENT NO. 6,578,086**

30. On June 10, 2003, United States Letters Patent No. 6,578,086 ("the '086 patent") for "Dynamically Managing the Topology of a Data Network" was duly and legally issued to Joseph Regan and Alfred Nothaft. All rights and interest in the '086 patent have been assigned to Spherix. A true and correct copy of the '086 patent is attached hereto as Exhibit B.

31. Upon information and belief, Juniper has infringed and continues to infringe the '086 patent. The infringing acts include at least the manufacture, sale and/or offer for sale of devices supporting/enabling Juniper's Q-Fabric (including, for example and without limitation, Q-Fabric routers and switches such as QFX3500, QFX3600 and QFX5100 switches), that are covered by one or more claims of the '086 patent. Juniper is liable for infringement of the '086 patent pursuant to at least 35 U.S.C. § 271 (a).

32. Juniper's acts of infringement have caused damage to Spherix and Spherix is entitled to recover from Juniper the damages sustained by Spherix as a result of Juniper's wrongful acts in an amount subject to proof at trial. Juniper's infringement of the '086 patent continues to cause damage to Spherix Inc.

33. Upon information and belief, Juniper's infringement of the '086 patent has been and continues to be willful and deliberate. As a result, Spherix is entitled to enhanced damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**INFRINGEMENT OF U.S. PATENT NO. 6,130,877**

34. On October 10, 2000, United States Letters Patent No. 6,130,877 ("the '877 patent") for "Rate Controlled Broadcast for Activation of Entities in Large Scale Data Networks" was duly and legally issued to Peter Chi-Kin Lee. All rights and interest in the '877 patent have

been assigned to Spherix. A true and correct copy of the '877 patent is attached hereto as Exhibit C.

35. Upon information and belief, Juniper has infringed and continues to infringe the '877 patent. The infringing acts include at least the manufacture, sale and/or offer for sale of devices running certain features of the JUNOS OS (including, for example and without limitation, Q-Fabric OSPF Routers), that are covered by one or more claims of the '877 patent. Juniper is liable for infringement of the '877 patent pursuant to at least 35 U.S.C. § 271 (a).

36. Juniper's acts of infringement have caused damage to Spherix and Spherix is entitled to recover from Juniper the damages sustained by Spherix as a result of Juniper's wrongful acts in an amount subject to proof at trial. Juniper's infringement of the '877 patent continues to cause damage to Spherix.

37. Upon information and belief, Juniper's infringement of the '877 patent has been and continues to be willful and deliberate. As a result, Spherix is entitled to enhanced damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## INFRINGEMENT OF U.S. PATENT NO. 7,664,123

38. On February 16, 2010, United States Letters Patent No. 7,664,123 ("the '123 patent") for "Generalized Virtual Router" was duly and legally issued to Peter Ashwood Smith, Hamid Ouid-Brahim, Bilel Jamoussi and Donald Fedyk. All rights and interest in the '123 patent have been assigned to Spherix. A true and correct copy of the '123 patent is attached hereto as Exhibit D.

39. Upon information and belief, Juniper has infringed and continues to infringe the '123 patent. The infringing acts include at least the manufacture, sale and/or offer for sale of devices (including, for example and without limitation, the Juniper T-Series Core Routers, such

as T320, T640, T1600, T4000, and TX Matrix product families, such as TX Matrix and TX Matrix Plus), that infringe one or more claims of the '123 patent. Juniper is liable for infringement of the '123 patent pursuant to at least 35 U.S.C. § 271 (a).

40. Juniper has had knowledge of the '123 patent and its relevance to Juniper's products and services since at least July 19, 2012, when an examiner at the U.S. Patent & Trademark Office applied the '123 patent as prior art against the then-pending claims of U.S. Patent Application No. 12/710,164 (now U.S. Patent No. 8,687,629). In addition, in 2013, Juniper cited the '123 patent as potentially relevant to the examiner at the PTO responsible for examining Juniper's U.S. Patent No. 8,560,660.

41. Juniper's acts of infringement have caused damage to Spherix and Spherix is entitled to recover from Juniper the damages sustained by Spherix as a result of Juniper's wrongful acts in an amount subject to proof at trial. Juniper's infringement of the '123 patent continues to cause damage to Spherix.

42. Upon information and belief, Juniper's infringement of the '123 patent has been and continues to be willful and deliberate. As a result, Spherix is entitled to enhanced damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**INFRINGEMENT OF U.S. PATENT NO. 8,607,323**

43. On December 10, 2013, United States Letters Patent No. 8,607,323 ("the '323 patent") for "Method for Providing Media Communication Across Firewalls" was duly and legally issued to Wei Yuan. All rights and interest in the '323 patent have been assigned to Spherix. A true and correct copy of the '323 patent is attached hereto as Exhibit E.

44. Upon information and belief, Juniper has infringed and continues to infringe the '323 patent. The infringing acts include at least the manufacture, sale and/or offer for sale of

devices (including, for example and without limitation, the J-series router and SIP ALG), that are covered by one or more claims of the '323 patent.  Juniper is liable for infringement of the '323 patent pursuant to 35 U.S.C. § 271 (a).

45. Juniper's acts of infringement have caused damage to Spherix and Spherix is entitled to recover from Juniper the damages sustained by Spherix as a result of Juniper's wrongful acts in an amount subject to proof at trial.  Juniper's infringement of the '323 patent continues to cause damage to Spherix.

46. Upon information and belief, Juniper's infringement of the '323 patent has been and continues to be willful and deliberate.  As a result, Spherix is entitled to enhanced damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

### **PRAYER FOR RELIEF**

WHEREFORE, Spherix prays for judgment and seeks relief against Juniper as follows:

(a) For judgment that the claims of the RE467 patent have been and/or continue to be infringed by Juniper;

(b) For judgment that the claims of the '086 patent have been and/or continue to be infringed by Juniper;

(c) For judgment that the claims of the '877 patent have been and/or continue to be infringed by Juniper;

(d) For judgment that the claims of the '123 patent have been and/or continue to be infringed by Juniper;

(e) For judgment that the claims of the '323 patent have been and/or continue to be infringed by Juniper;

(f) For an accounting of all damages sustained by Spherix as the result of Juniper's acts of infringement;

(g) For actual damages together with, prejudgment interest, according to proof;

(h) For enhanced damages pursuant to 35 U.S.C. § 284;

(i) For an award of attorneys' fees pursuant to 35 U.S.C. § 285 or as otherwise permitted by law;

(j) For all costs of suit; and

(k) For such other and further relief as the Court may deem just and proper.

Date: May 2, 2014

Respectfully submitted**:**

*/s/ Damien Nicholas Tancredi*
By: _____
Damien Nicholas Tancredi (DE No. 5395)
**COZEN O'CONNOR**
1201 North Market Street
Suite 1001
Wilmington, DE 19801
Tel: (302) 295-2000
Fax: (302) 295-2013
Email: dtancredi@cozen.com

Kerry B. McTigue
Barry Golob
Donald R. McPhail
**COZEN O'CONNOR**
The Army and Navy Building
1627 I Street, NW, Suite 1100
Washington, D.C. 20006
Tel: (202) 912-4800
Fax: (202) 861-1905
Email: kmctigue@cozen.com
Email: bgolob@cozen.com
Email: dmcphail@cozen.com

*Attorneys for Plaintiff Spherix Inc.*