**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| SPHERIX INCORPORATED and NNPT, LLC, | § § § § |
| Plaintiffs, | § § Civil Action No. 14-578 (SLR) |
| v. | § § |
| JUNIPER NETWORKS, INC. | § § |
| Defendant. | § § § |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS**
**PLAINTIFFS' CLAIMS OF WILLFUL PATENT INFRINGEMENT**

## TABLE OF CONTENTS

**Page**

I.      Nature and Stage of the Proceedings .................................................................................. 1

II.     Summary of the Argument.............................................................................................. 1

III.    Statement of the Facts................................................................................................... 3

IV.     Argument ........................................................................................................................ 5

V.      Conclusion ...................................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affinity Labs of Tex., LLC v. Toyota Motor North America, Inc.*,
    No. 13-365, 2014 U.S. Dist. LEXIS 90379 (W.D. Tex. May 12, 2014) ............................9, 10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...........................................................................................................5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 570 (2007)...................................................................................................5

*Fairchild Semiconductor Corporation v. Power Integrations, Inc.*,
    935 F. Supp. 2d 772 (D. Del. 2013).................................................................................6, 8

*Gammino v. AT&T*,
    No. 12-666, 2013 U.S. Dist. LEXIS 166321 (D. Del., Nov. 22, 2013).................................5, 6

*Mallinckrodt Inc. v. E-Z-Em, Inc.*,
    671 F. Supp. 2d 563, 569 (D. Del. 2009).........................................................................10, 11

*McRo, Inc. v. Rockstar Games, Inc.*,
    No. 12-1513, 2014 U.S. Dist. LEXIS 34161 (D. Del., Mar. 17, 2014) ...................................11

*MobilMedia Ideas LLC v. HTC Corp.*,
    No. 2:10-cv-112, 2011 U.S. Dist. LEXIS 104892 at *2 (E.D. Tex. Sep. 15,
    2011) ....................................................................................................................................5

*Netgear, Inc. v. Ruckus Wireless, Inc.*,
    852 F. Supp. 2d 470 (D. Del. 2012).....................................................................................6

*ReefEdge Networks, LLC v. Juniper Networks, Inc.*,
    No. 13-412, 2014 U.S. Dist. LEXIS 37322 (D. Del. Mar. 21, 2014) ................................10, 11

*S.O.I.T.E.C. Silicon on Insulator Techs., S.A. v. MEMC Elec. Materials, Inc.*,
    No. 08-292, 2009 U.S. Dist. LEXIS 13155 at *2 (D. Del. Feb. 20, 2009)...............................6

*In re Seagate Tech., LLC*,
    497 F.3d 1360, 1371 (Fed. Cir. 2007)..................................................................................5

*SoftView LLC v. Apple Inc.*,
    No. 10-389, 2012 U.S. Dist. LEXIS 104677 (D. Del. Jul. 26, 2012) .....................................10

*Vasudevan Software Inc. v. Tibco Software, Inc.*,
    No. 11-06638, 2012 U.S. Dist. LEXIS 69952 (N.D. Cal. May 17, 2012)............................9, 10

*Walker Digital, LLC v. Facebook, Inc.*,
    852 F. Supp. 2d 559 (D. Del. 2012)....................................................................................5, 8

**Other Authorities**

Fed. R. Civ. P. 8(a)(2).................................................................................................................4

Fed. R. Civ. P. 12(b) ..................................................................................................................5

I.      **NATURE AND STAGE OF THE PROCEEDINGS**

On May 2, 2014, Plaintiff Spherix Incorporated ("Spherix") filed its Complaint against

Defendant Juniper Networks, Inc. ("Juniper"), seeking relief for Juniper's willful infringement of

U.S. patent Nos. RE40467 ("the RE467 patent"); 6,578,086 ("the '086 patent"); 6,130,877 ("the

'877 patent"); 7,664,123 ("the '123 patent"); and 8,607,323 ("the '323 patent") (collectively, the

"Asserted Patents").  D.I. 1.  On June 1, Spherix assigned its rights in the Asserted Patents to its

wholly-owned subsidiary, NNPT, LLC ("NNPT").  On June 24, Spherix and Juniper stipulated

that Spherix may file an amended complaint on or before July 8, 2014.  D.I. 12.  On July 8,

Spherix and NNPT filed their First Amended Complaint for Patent Infringement (Plaintiffs'

"Amended Complaint").  D.I. 13.  On August 8, Juniper filed the current Motion to Dismiss

Plaintiffs' Amended Complaint.  D.I. 16.

II.     **SUMMARY OF THE ARGUMENT**

1.      Juniper's Motion to Dismiss should be denied because Plaintiffs' Amended

Complaint pleads facts plausibly showing that Juniper had the requisite pre-suit knowledge of

each Asserted Patent to support Plaintiffs' willful infringement claims.[1]  As explained in the

Amended Complaint, Juniper acquired pre-suit knowledge of the Asserted Patents at least as

early as the date of the Nortel patent auction.  Juniper, one of the world's largest manufacturers

and sellers of routing and switching products, participated in the Nortel patent auction, which

included the Asserted Patents.   Juniper was aware that the Asserted Patents are highly relevant

to Juniper's products and services.  In fact, the majority of Juniper's revenue from at least

January 1, 2011 has been generated from the sale of products and services implementing

technology that infringes the Asserted Patents.  It is reasonable to infer that when Juniper was

involved in the Nortel patent auction, Juniper acquired the requisite pre-suit knowledge of at

---

[1] Juniper's Motion to Dismiss does not address any claims of infringement of the Asserted
Patents, but rather only moves to dismiss Plaintiffs' willful infringement claims.

least those patents claiming technology that is essential to Juniper's business.  Furthermore, it is reasonable to infer that upon reviewing the Asserted Patents, which are highly relevant to Juniper's products and services, Juniper knew or should have known that by making and selling those products and services Juniper was and/or would be acting despite an objectively high likelihood that Juniper's actions constituted infringement of a valid patent.

2.      Juniper does not cite to any authority supporting its theory that participating in a patent auction involving patents that are highly relevant to Juniper's operations, such as the Asserted Patents, is insufficient to plead that Juniper had pre-suit knowledge of the Asserted Patents.  Instead, Juniper incorrectly analogizes this case to those where a defendant was alleged to have been put "on notice" of the patents-in-suit based on its knowledge of <u>other patents </u>in that plaintiff's patent portfolio.  Those cases are inapplicable here because Plaintiffs have alleged facts supporting the conclusion that, during its participation in the Nortel auction, <u>Juniper specifically gained knowledge of the Asserted Patents</u>, not that Juniper was put on notice of the Asserted Patents because it knew of *other* patents in the Nortel portfolio.

3.      This Court has held that the citation of an Asserted Patent by a U.S.P.T.O. examiner <u>or</u> the defendant in the prosecution history of one of the defendant's patents is sufficient to support an allegation of pre-suit knowledge for a willful infringement claim. Plaintiffs' Amended complaint alleges that at least one of the Asserted Patents was cited by <u>both</u> Juniper and the examiner during the prosecution of Juniper's patents.  Juniper cannot cite to any authority supporting its contention that these facts are insufficient to successfully plead Juniper's pre-suit knowledge of the patent.

4.      Plaintiffs' Amended Complaint includes more than enough facts for this Court to reasonably infer a link between Juniper's pre-suit knowledge of the Asserted Patents and Juniper's knowledge that there was an objectively high likelihood that its actions constituted

infringement.  When reviewing the Asserted Patents during the Nortel patent auction, Juniper

knew the relevance of the Asserted Patents to Juniper's business, and that Juniper infringed the

Asserted Patents.  Moreover, at least one Asserted Patent was cited both by the examiners at the

U.S. Patent & Trademark Office and by Juniper during prosecution of a number of Juniper's

patent applications.  These facts, in addition to the fact that most of Juniper's revenue comes

from its infringement of the Asserted Patents, establish at least a reasonable inference that

Juniper knowingly infringed the Asserted Patents or at least did so with reckless indifference.

Again, Juniper's cited case law regarding this issue is inapposite.  The cases cited by Juniper

held that where knowledge of a patent was obtained <u>by particular individuals who were not</u>

<u>plausibly aware of defendant's infringement risks</u>, there was not a sufficient link between

knowledge of the patent and knowledge of infringement.  These facts simply do not apply to

Juniper.  Accordingly, Juniper's Motion to Dismiss should be denied in its entirety.

## III.    STATEMENT OF THE FACTS

In its Amended Complaint, Plaintiffs Spherix and NNPT ("Plaintiffs") alleged that

Juniper had pre-suit knowledge of each of the Asserted Patents.  D.I. 13 at ¶ 30.[2]  Plaintiffs

further alleged that Juniper knew that each of the Asserted Patents was relevant to one or more of

Juniper's products and that Juniper knew (or at least should have known) that its products

infringe the Asserted Patents.  *Id.*

With respect to the '123 patent, Plaintiffs further alleged that Juniper knew of that

Asserted Patent, and its relevance to Juniper's products, by virtue of the fact that a patent

examiner at the United States Patent and Trademark Office (hereafter, "PTO") cited the '123

patent as prior art against the then-pending claims of one of Juniper's patent applications.  *Id.* at

---

[2] *See also* ¶¶ 35, 40, 44, 50.  Plaintiffs made the same relevant allegations for each Asserted
Patent, but, for simplicity's sake, Plaintiffs will hereafter cite to only the first example for each
knowledge-related fact.

¶ 44.  Additionally, Plaintiffs alleged that Juniper cited the '123 patent as potentially relevant to a different PTO examiner responsible for examining a second Juniper patent application.  *Id.*

Regarding the remaining Asserted Patents, Plaintiffs alleged that Juniper became aware of those patents, and their relevance to Juniper's products, by virtue of Juniper's participation in the 2011 Nortel patent auction, during which the Asserted Patents, *inter alia*, were sold for $4.5 billion.  *Id.* at ¶ 17.  Plaintiffs alleged that Juniper, "one of the world's largest manufacturers and sellers of routing in switching products," actively participated in the Nortel Auction.  *Id.* at ¶¶ 17, 22.

Juniper's current motion seeks to dismiss all of Plaintiffs' willful infringement claims on the grounds that Plaintiffs have not met the pleading standard required by Fed. R. Civ. P. 8(a)(2). D.I. 16.  Specifically, Juniper argues that the following facts, either alone or in combination, are not sufficient to plead that Juniper had pre-suit knowledge of a patent: (a) Juniper's citation of an Asserted Patent to the PTO as potentially relevant to Juniper's patent application; (b) a PTO examiner's citation to and application of an Asserted Patent as prior art against a second Juniper patent application; (c) Juniper's knowledge that all of the Asserted Patents are relevant to Juniper's products; and (d) Juniper's participation in an auction for the Asserted Patents.  D.I. 16 at 5-6.

In this opposition, however, Plaintiffs show that, pursuant to controlling case law, Plaintiffs' Amended Complaint states a valid claim for willful infringement, and thus Juniper's motion should be denied.

IV.     **ARGUMENT**

A.     **Taking All Facts and Inferences In Plaintiffs' Favor, Plaintiffs' Amended Complaint Has Sufficiently Pled Willful Infringement.**

For each Asserted Patent, Plaintiffs' Amended Complaint pleads: (a) Juniper had pre-suit knowledge of the patent and of Juniper's infringement of the patent; (b) Juniper acted despite an objectively high likelihood that its actions constituted infringement; and (c) sufficient facts to reasonably infer that Juniper had the requisite knowledge for willful infringement.  Plaintiffs have therefore successfully and properly stated a claim for willful infringement of the Asserted Patents under the applicable standards.

When reviewing a motion to dismiss for failure to state a claim, this Court "must accept the factual allegations of the non-moving party as true and draw all reasonable inferences in its favor." *See*, *e.g.*, *Walker Digital, LLC v. Facebook, Inc.*, 852 F. Supp. 2d 559, 562 (D. Del. 2012).  Although a complaint "requires more than labels and conclusions," it "does not need detailed factual allegations" to withstand a motion to dismiss under Fed. R. Civ. P. 12(b).  *Id.* Rather, a well-pleaded requires only "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

To ultimately prove willful infringement, the "patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *Walker Digital*, 852 F. Supp. 2d at 567 (quoting *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007)).  While this may be a high standard to show at trial, the standard for *pleading* willful infringement "is not high." *Gammino v. AT&T*, No. 12-666, 2013 U.S. Dist. LEXIS 166321 at *11-12 (D. Del., Nov. 22, 2013) (quoting *MobilMedia Ideas LLC v. HTC Corp.*, No. 2:10-cv-112, 2011 U.S. Dist. LEXIS 104892 at *2 (E.D. Tex. Sep. 15, 2011)).

5

To sufficiently plead a willful infringement claim, a plaintiff need only provide "a pleading equivalent to 'with a knowledge of the patent and of his infringement.'"  *Gammino*, 2013 U.S. Dist. LEXIS 166321 at *11.  Moreover, knowledge may be averred generally.  *Id* at *12; *Fairchild Semiconductor Corporation v. Power Integrations, Inc.*, 935 F. Supp. 2d 772, 778-79 (D. Del. 2013) (citing Fed. R. Civ. P. 9)).  Indeed, this Court does not "require more detail with respect to [a] plaintiff's willful infringement claims than is required by Form 18."  *Netgear, Inc. v. Ruckus Wireless, Inc.*, 852 F. Supp. 2d 470, 477 (D. Del. 2012) (quoting *S.O.I.T.E.C. Silicon on Insulator Techs., S.A. v. MEMC Elec. Materials, Inc.*, No. 08-292, 2009 U.S. Dist. LEXIS 13155 at *2 (D. Del. Feb. 20, 2009)).

Plaintiffs have pled more than enough facts related to Juniper's knowledge of the Asserted Patents, of their relevance to Juniper's products and of Juniper's likely infringement thereof.  In particular, Plaintiffs' Amended Complaint alleges that Juniper had knowledge of one of the Asserted Patents, and its relevance to Juniper's products, because the patent had been cited by both Juniper and a patent examiner during the prosecutions of multiple Juniper patent applications relating to Juniper's products.  D.I. 13 at ¶ 44.  Plaintiffs' Amended Complaint further alleges that for each Asserted Patent, Juniper "had knowledge of [that] patent since at least" the 2011 Nortel patent auction, as well as knowledge of the patent's "relevance to Juniper's products and services, including Juniper's infringement [of the patent]."  *E.g., id.* at ¶ 30.  As set forth in Plaintiffs' Amended Complaint, this knowledge can be inferred from the fact that Juniper actively participated in the Nortel auction, which included patents that covered the very technology that was and still is highly relevant to Juniper's business and products, including the Asserted Patents.  *Id.* at ¶ 17.

Finally, Plaintiffs' Amended Complaint alleges that Juniper continued to make, sell and offer for sale its products with knowledge of the Asserted Patents and their relevance to Juniper's

products despite "an objectively high likelihood that Juniper's actions constituted infringement of a valid patent." *E.g., id.* at ¶ 31.

Assuming Plaintiffs' factual allegations are true, as this Court must do for the purposes of deciding Juniper's Motion to Dismiss, Plaintiffs' Amended Complaint sets forth sufficient facts to support its willful infringement claims.

More specifically, as explained in the Amended Complaint, Juniper is "one of the world's largest manufacturers and sellers of routing and switching products," with offices through the United States and in over a dozen other countries. *Id* at ¶ 22.  Juniper participated in the Nortel patent auction, in which the Nortel portfolio sold "for an unprecedented and widely-publicized $4.5 billion," about $750,000 per patent, to a "consortium of leading technology companies." *Id.* at ¶ 17.  It is not only plausible, but very likely that during its participation in the Nortel auction and prior to determining whether to bid hundreds of millions – if not billions – of dollars on the Nortel portfolio, a large, sophisticated company like Juniper would have carefully reviewed the patents it sought to acquire.  At a minimum, Juniper would have almost certainly analyzed those patents that were "relevan[t] to Juniper's products and services" and those which Juniper likely infringed, during its participation in the auction.  Thus, Plaintiffs' factual allegations, taken as true, are more than sufficient to plead that Juniper committed willful infringement.

The facts and allegations set forth in Plaintiffs' Amended Complaint are also sufficient to reasonably infer a link between Juniper's pre-suit knowledge of the Asserted Patents and Juniper's infringement thereof.  According to the Amended Complaint, during Juniper's participation in the Nortel patent auction, Juniper attained knowledge not only of the Asserted Patents, but also of their "relevance to Juniper's products and services." *Id.* at ¶ 30.  Knowledge of the relevance of the Asserted Patents to Juniper's products and services necessarily includes knowledge of their infringement thereby (since they would not otherwise be relevant).

Plaintiffs' Amended Complaint further alleges that the "majority of Juniper's revenue" comes from "products and services implementing technology that infringes the Asserted Patents." *Id.* at ¶ 25. Thus, despite its knowledge of the Asserted Patents and their relevance to Juniper's products, Juniper continued to engage in massive infringement of the Asserted Patents, thereby generating more than half of its total revenue, with reckless at least indifference to its infringement.

For at least these reasons, Plaintiffs' Amended Complaint successfully states a claim for willful infringement of the Asserted Patents.

### B.     Juniper's Legal Support is Inapplicable to this Case

Again, all factual allegations in the Amended Complaint must be taken as true and that all reasonable inferences are drawn in Plaintiffs' favor, and Juniper does not deny Plaintiffs' allegations of Juniper's pre-suit knowledge or Plaintiffs' related factual support. Instead, Juniper seeks to substantially heighten the pleading standard for willful infringement by misrepresenting the facts of this case and misconstruing this and other Courts' opinions on the subject. The case law Juniper cites is inapplicable to the present facts, as this Court has refused to dismiss willfulness claims that included far fewer facts regarding the defendant's pre-suit knowledge than are present in Plaintiffs' Amended Complaint. *See, e.g., Fairchild*, 935 F. Supp. 2d at 778-79 (holding that a boilerplate allegation of patent knowledge sufficient to state a willfulness claim where the opposing party did not dispute such knowledge); *Walker Digital, LLC v. Facebook, Inc.*, 852 F. Supp. 2d 559, 567-68 (D. Del. 2012) (denying motion to dismiss where complaint alleged pre-suit knowledge based on defendant's "interactions with representatives of [plaintiff]"). For example, Juniper argues that it "cannot be held to constructive notice" of all of the patents in the Nortel patent portfolio by virtue of its participation in the Nortel auction. D.I. 16 at 5. The Amended Complaint, however, does not allege that Juniper had "constructive

notice" of all patents in the Nortel portfolio, but that Juniper <u>specifically gained knowledge of the Asserted Patents</u> within the portfolio because those patents were highly relevant to Juniper's products – so relevant that over half of Juniper's revenue comes from the infringement of these patents. *E.g.* D.I. 13 at ¶¶ 25, 30. In other words, during its participation in the Nortel auction, Juniper no doubt reviewed the Nortel patents that were highly relevant to Juniper's business and those that Juniper's products likely infringed, including the Asserted Patents. Because Juniper cannot find case law to support its argument that the facts in the Amended Complaint are insufficient, Juniper improperly analogizes the facts of this suit to inapposite cases.

In particular, to try to support its argument that knowledge of a patent portfolio is insufficient to support a willfulness claim, Juniper cites to *Vasudevan Software Inc. v. Tibco Software, Inc.*, No. 11-06638, 2012 U.S. Dist. LEXIS 69952 (N.D. Cal. May 17, 2012) and *Affinity Labs of Tex., LLC v. Toyota Motor North America, Inc.*, No. 13-365, 2014 U.S. Dist. LEXIS 90379 (W.D. Tex. May 12, 2014). The pertinent facts of those cases, however, are very different from the facts of the present case.

In *Vasudevan*, the plaintiff attempted to plead willfulness of one patent based upon the defendant's knowledge of <u>a different patent</u> in the plaintiff's patent portfolio. 2012 U.S. Dist. LEXIS 69952 at *2, *9. The District Court for the Northern District of California dismissed plaintiff's willfulness claim because "requisite knowledge of the patent allegedly infringed simply cannot be inferred from mere knowledge of *other* patents." *Id.* at *9 (emphasis in original). Here, however, Plaintiffs have **not** alleged that Juniper's knowledge of the Asserted Patents should be inferred from Juniper's knowledge of *other* patents in the Nortel portfolio, but that Juniper specifically knew of the Asserted Patents *themselves*. *Vasudevan*, therefore, provides no support for Juniper's argument.[3]

---

[3] To the contrary, *Vasudevan* recognizes that to support a willfulness claim, a plaintiff "need only make out <u>the barest factual assertion</u> of knowledge." *Id.* at *12-13 (emphasis added).

As in *Vasudevan*, the plaintiff in *Affinity Labs* based its allegation of the defendant's pre-suit knowledge on the fact that the defendant knew of *other* patents in the plaintiff's patent portfolio.  2014 U.S. Dist. LEXIS 90379 at *15.  The *Affinity Labs* Court held that the fact that the plaintiff previously sued the defendant for the infringement of other patents is insufficient to support a willfulness claim.  *Id.* at *15-16.  Again, Plaintiffs' Amended Complaint does <u>not</u> allege that Juniper has constructive knowledge of the Asserted Patents because Juniper knew of other patents in the Nortel portfolio or because Juniper had been previously sued by Nortel for infringement.  Like *Vasudevan*, *Affinity Labs* is inapplicable to the facts of this case.

Juniper has even less support for its argument that the fact that both Juniper and a patent examiner cited to an Asserted Patent during multiple prosecutions of Juniper's patents is insufficient to establish pre-suit knowledge of the Asserted Patent.  For example, Juniper relies on *SoftView LLC v. Apple Inc.*, No. 10-389, 2012 U.S. Dist. LEXIS 104677 (D. Del. Jul. 26, 2012).  *SoftView*, however, only holds that pre-suit knowledge cannot be inferred solely from the fact that one of the defendant's <u>subsidiaries</u> "cited the published application of the parent application of the [asserted] patent."  *Id.* at *16.  Once again, these facts simply do not apply here.  Both Juniper (not one of its subsidiaries) and a patent examiner specifically cited <u>to the Asserted Patent itself</u>, and more than once, not merely the "published application of the parent application" of the Asserted Patent.

The other cases to which Juniper cites actually contradict Juniper's argument and support Plaintiffs' position.  For instance, Juniper cites to *Execware v. Staples*, which explains that "a complaint sufficiently pleads a defendant's actual knowledge . . . when the plaintiff alleges that a defendant <u>previously filed papers with the PTO identifying the patents as prior art.</u>"  No. 11-836, 2012 U.S. Dist. LEXIS 174855 at *7 (D. Del. Dec. 10, 2012) (emphasis added) (citing *Mallinckrodt Inc. v. E-Z-Em, Inc.*, 671 F. Supp. 2d 563, 569 (D. Del. 2009)).  Here, Plaintiffs'

Amended Complaint pleads not only this, but more.  *See*, *e.g.*, D.I. 13 at ¶ 44.  Not only did

*Juniper* cite to the Asserted Patent during the prosecution of Juniper's patent application, but

also a patent examiner did so as well during prosecution of a different Juniper patent application.

*Id.*  Moreover, Plaintiffs' Amended Complaint establishes that Juniper was aware of all of the

Asserted Patents once it became involved in the Nortel patent auction.  *E.g., id.* at ¶¶ 17, 30.

Therefore, Juniper's argument that these facts are insufficient to establish pre-suit knowledge of

the Asserted Patents fails.

Finally, Juniper argues that the Amended Complaint does not adequately plead

willfulness because it purportedly "fails to plead any connection between the Nortel auction" and

Juniper's infringement.  D.I. 16 at 7.  To the contrary, the Amended Complaint plainly states that

Juniper gained knowledge of the Asserted Patents and "Juniper's infringement thereof" during its

participation in the Nortel auction.  *E.g.*, D.I. 13 at ¶ 30.  Juniper fails to explain how there is no

link between knowledge and infringement despite the fact that Juniper knew of the Asserted

Patents, of the relevance of the Asserted Patents to Juniper's products, and of the fact that

Juniper infringed the Asserted Patents <u>at the same time.</u>

Furthermore Juniper's purported legal support does nothing to give credibility to

Juniper's argument.  Of the bevy of case law cited by Juniper, only two cases held that there was

not an adequate "link" between knowledge of the patent and knowledge of infringement.  *See*

*generally ReefEdge Networks, LLC v. Juniper Networks, Inc.*, No. 13-412, 2014 U.S. Dist.

LEXIS 37322 (D. Del. Mar. 21, 2014); *McRo, Inc. v. Rockstar Games, Inc.*, No. 12-1513, etc.,

2014 U.S. Dist. LEXIS 34161.  In both cases, however, the plaintiff alleged that <u>particular</u>

<u>individuals</u> gained pre-suit knowledge of the asserted patent, but the plaintiff failed to connect

those individuals' knowledge to the defendant's infringement.  *See ReefEdge*, 2014 U.S. Dist.

LEXIS 37322 at *6; *McRo*, 2014 U.S. Dist. LEXIS 34161 at *15.  Once more, these facts do not

apply here.  Indeed, the *McRo* Court explained that the plaintiff's complaint was "entirely silent on [pre-suit] knowledge of infringement" and that the plaintiff failed to even "address Defendants' assertions regarding the insufficiency of [the plaintiff's] willful infringement claims." 2014 U.S. Dist. LEXIS 34161 at *17-18, *27.

For at least these reasons, the Court should reject Juniper's Motion to Dismiss the willfulness claims in Plaintiffs' Amended Complaint.

## V.    CONCLUSION

For at least the reasons stated above, Plaintiffs respectfully request the Court to deny Juniper's Motion to Dismiss the willful infringement claims in Plaintiffs' Amended Complaint.


Date: August 29, 2014                         Respectfully submitted**:**

                                              By: ___*/s/ Damien Nicholas Tancredi* _____
                                              Damien Nicholas Tancredi (DE No. 5395)
                                              **COZEN O'CONNOR**
                                              1201 North Market Street
                                              Suite 1001
                                              Wilmington, DE 19801
                                              Tel: (302) 295-2000
                                              Fax: (302) 295-2013
                                              Email: dtancredi@cozen.com

                                              Kerry B. McTigue
                                              Barry Golob
                                              Donald R. McPhail
                                              **COZEN O'CONNOR**
                                              The Army and Navy Building
                                              1627 I Street, NW, Suite 1100
                                              Washington, D.C. 20006
                                              Tel: (202) 912-4800
                                              Fax: (202) 861-1905
                                              Email: kmctigue@cozen.com
                                              Email: bgolob@cozen.com
                                              Email: dmcphail@cozen.com

                                              ***Attorneys for Plaintiffs Spherix Incorporated &
                                              NNPT, LLC.***

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this document was served on all counsel who are deemed to have consented to electronic service.  Local Rule CV-5(a)(3)(A).  Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email on this 29th day of August, 2014

*/s/ Damien N. Tancredi*
Damien N. Tancredi (DE No. 5395)

13