IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SPHERIX INCORPORATED and NNPT, LLC, | ) ) ) |
| Plaintiffs, | ) ) |
| | ) C.A. No. 14-578 (SLR) |
| v. | ) |
| | ) **JURY TRIAL DEMANDED** |
| JUNIPER NETWORKS, INC., | ) ) |
| Defendant. | ) |

### JUNIPER NETWORK, INC.'S ANSWER AND AFFIRMATIVE DEFENSES TO SPHERIX INCORPORATED'S FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Defendant Juniper Networks, Inc. ("Juniper") hereby responds to the First Amended Complaint for Patent Infringement ("First Amended Complaint") filed by Plaintiff Spherix Incorporated and NNPT, LLC (collectively, "Spherix") as follows.  In response to all paragraphs of the Complaint, Juniper denies each and every allegation except as expressly admitted herein. The numbered allegations of the First Amended Complaint are set forth below, followed by Juniper's Answer.

### THE PARTIES

1.      Spherix is a corporation duly organized and existing under the laws of the state of Delaware with a principal place of business at 7927 Jones Branch Drive, Suite 3125, Tysons Corner, VA 22102 USA.

**ANSWER**: Juniper lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 1 and, on that basis, denies them.

2.      NNPT is a corporation duly organized and existing under the laws of the state of Texas with a principal place of business at 222 North Fredonia, Longview, Texas 75601.

**ANSWER**: Juniper lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 2 and, on that basis, denies them.

3.      Upon information and belief, Juniper is a corporation duly organized and existing under the laws of the State of Delaware with a principal place of business at 1194 North Mathilda Avenue, Sunnyvale, CA 94809.  Juniper may be served with process via its registered agent, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

**ANSWER**: Juniper admits that it is a corporation organized and existing under the laws of the State of Delaware, having a place of business at 1133 Innovation Way, Sunnyvale, California 94089 and that its registered agent is The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.  Except as expressly admitted herein, Juniper denies each and every allegation contained in paragraph 3 of the First Amended Complaint.

## JURISDICTION

4.      This is an action for patent infringement under the patent laws of the United States, Title 35 of the United States Code, arising from Juniper's unauthorized manufacture, sale and/or offer for sale of various products, including, but not limited to, switches for networks, covered by, and prior to the expiration of, U.S. Patent Nos. RE40467; 6,578,086; 6,130,877; 7,664,123; and 8,607,323.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, including 35 U.S.C. § 271(a).

**ANSWER**: Juniper admits that the First Amended Complaint purports to state an action for patent infringement arising under Title 35 of the United States Code.  Juniper further admits that the jurisdiction is allegedly based upon 28 U.S.C. §§ 1331 and 1338(a).  Except as expressly admitted herein, Juniper denies each and every allegation contained in paragraph 4 of the Complaint.

5.      This Court has personal jurisdiction over Juniper by virtue of the fact that Juniper is a Delaware corporation under the Delaware long arm statute, because Juniper has availed itself of the rights and benefits of this District by conducting business in this jurisdiction, including by promoting its products and services for sale via the internet, which are accessible to and accessed by residents of this District, and because Juniper has also purposefully availed itself of the rights and benefits of the laws of the State of Delaware, having previously submitted to personal jurisdiction in and filed lawsuits in the United States District Court for the District of Delaware. The exercise of jurisdiction over Juniper would not offend traditional notions of fair play and substantial justice.

**ANSWER:** Juniper admits that, for the purposes of this lawsuit only, this Court has personal jurisdiction over it.  Except as expressly admitted herein, Juniper denies each and every allegation contained in paragraph 5 of the First Amended Complaint.

## VENUE

6.     Juniper conducts business in this District, including providing and promoting products and services which are used, offered for sale, sold, imported into and have been purchased in Delaware, including in this judicial district.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1331, 1338(a), 1391(b), (c) and (d) and 1400(b).

**ANSWER**: Juniper admits that, for the purposes of this lawsuit only, venue is proper in this Court.  Except as expressly admitted herein, Juniper denies each and every allegation contained in paragraph 6 of the First Amended Complaint.

## BACKGROUND

7.     This lawsuit asserts causes of action for infringement of United States Patent Nos. RE40467; 6,578,086, 6,130,877; 7,664,123; and 8,607,323 (collectively, the "Asserted Patents"). All of the inventions disclosed and claimed in the Asserted Patents were conceived and created by inventors that were working for an entity within or related to the Nortel corporate family at the time of the invention ("Nortel").

**ANSWER**: Juniper admits that the First Amended Complaint purports to assert infringement of United States Patent Nos. RE40467; 6,578,086; 6,130,877; 7,664,123; and 8,607,323 (collectively, the "Asserted Patents").  Except as expressly admitted herein, Juniper lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in paragraph 7 and, on that basis, denies them.

8.     During bankruptcy proceedings many years later, Nortel sold the Asserted Patents, among others, to a consortium of technology companies known as Rockstar Bidco, L.P. On information and belief, Defendant Juniper participated in the auction during which Rockstar Bidco, L.P. purchased the Asserted Patents from Nortel.

**ANSWER**: Juniper denies that it directly bid in the auction described in paragraph 8. Juniper lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 8 and, on that basis, denies them.

9. Based on a purchase agreement from Rockstar Consortium US LP, Plaintiff Spherix acquired the Asserted Patents. Spherix subsequently transferred the Asserted Patents to Plaintiff NNPT. Spherix and NNPT have the exclusive rights to sue for infringement and recover damages for all past, present, and future infringement of the Asserted Patents.

**ANSWER**: Juniper lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 9 and, on that basis, denies them.

10. Nortel's history is inextricably intertwined with the origins of telecommunications. Alexander Graham Bell invented the telephone in 1874, for which he received a United States Letters Patent in 1876 (U.S. Patent No. 174,465). The Bell Telephone Company (later AT&T) was formed in 1877. Bell Canada was formed three years later, in 1880. Nortel was formed as the manufacturing arm of Bell Canada in 1895. In its early years, Nortel was instrumental in establishing the Canadian telecommunications industry. By the mid-twentieth century, Nortel had matured into a global research and development powerhouse.

**ANSWER**: Juniper lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 10 and, on that basis, denies them.

11. Each of the former Nortel employees who is named as an inventor on an Asserted Patent assigned all their rights in the respective Asserted Patent to Nortel.

**ANSWER**: Juniper lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 11 and, on that basis, denies them.

12. At its peak in 2000, Nortel had grown to more than 90,000 employees world-wide, including 35,000 in the United States, had market capitalization of nearly $300 billion and had yearly revenues approaching $30 billion. In 2000 alone, for example, Nortel spent nearly $4 billion on research and development involving some 25,0000 research and development employees world-wide, including nearly 10,000 in the United States.

**ANSWER**: Juniper lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 12 and, on that basis, denies them.

13. Nortel had offices world-wide, with over 100 locations in the United States alone.

**ANSWER**: Juniper lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 13 and, on that basis, denies them.

14. Nortel was an innovator in the telecommunications industry. For example, Nortel was one of the first to envision telecommunications over fiber optics; it led the industry's move to the era of digital telecommunications; it was the first to develop a telephone with the controls

in the handset rather than in the base; and it contributed to the development of numerous telecommunications standards and created core technology necessary to implement many of those standards.  From 1992 through 2009, Nortel invested more than $34 billion into research and development.

**ANSWER**: Juniper lacks knowledge or information sufficient to form a belief as to the

truth of the allegations set forth in paragraph 14 and, on that basis, denies them.

15.    Nortel's substantial research and development investments, and the inventiveness of the Nortel technology professionals, directly resulted in Nortel receiving well over 4,200 patents covering wireless, wireless 4G, data networking, optical, voice, internet, service provider, semiconductor and other telecommunications as of July 2011.  Nortel made patents a priority and its employees received bonuses for their innovations.  Each of the Asserted Patents issued as the result of the inventiveness of Nortel personnel and Nortel's significant research investment.

**ANSWER**: Juniper lacks knowledge or information sufficient to form a belief as to the

truth of the allegations set forth in paragraph 15 and, on that basis, denies them.

16.    Like many companies in the telecommunications industry, the economic and competitive pressures during the 2000s – including competition from manufacturing operations based on China – resulting in Nortel being forced to restructure, contract in size, and eventually enter bankruptcy.  By the end of 2008, Nortel's full-time-employee count had fallen below 30,000, with approximately 10,000 in the United States.  Nortel's revenues had fallen to less than $10 billion, resulting in an operating loss of greater than $2 billion.

**ANSWER**: Juniper lacks knowledge or information sufficient to form a belief as to the

truth of the allegations set forth in paragraph 16 and, on that basis, denies them.

17.    Nortel entered bankruptcy protection in 2009.  As part of the bankruptcy, Nortel sold a portion of its patent assets for an unprecedented and widely-publicized $4.5 billion – which was $1.3 billion more than the combined value of all of Nortel's business units that were sold prior to the patent auction.  The purchasers were a consortium of leading technology companies collectively known as Rockstar Bidco, LP.  Among the assets sold to Rockstar Bidco, LP were the Asserted Patents.  On information and belief, Juniper also participated in the auction of the Nortel patent assets.

**ANSWER**: Juniper lacks knowledge or information sufficient to form a belief as to the

truth of the allegations set forth in paragraph 17 and, on that basis, denies them.

18.    Nortel's bankruptcy cost more than 30,000 employees their jobs at Nortel, and left others without pension and life insurance coverage.  Employee pensions were slashed in half when Nortel could no longer meet payment obligations.  Some workers lost life insurance or medical benefits when the company's self-funded programs collapsed.  Absent the auction of the

Nortel patents, including the Asserted Patents, these funding shortages would have been far greater and their impact far more damaging to Nortel employees.

**ANSWER**: Juniper lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 18 and, on that basis, denies them.

19.     Rockstar Bidco, LP transferred the patents to Rockstar Consortium US, LP ("Rockstar"), an intellectual property company built on a core of former Nortel technology and business professionals.  Many of Rockstar's employees are former Nortel employees, including former Nortel engineers, managers and attorneys.  Plaintiff Spherix was founded in 1967 as a scientific research company.  Spherix's common stock trades on the NASDAQ Capital Market system under the symbol SPEX.  Plaintiff NNPT is a wholly-owned subsidiary of Spherix Incorporated.

**ANSWER**: Juniper lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 19 and, on that basis, denies them.

20.     Historically, Spherix has focused on biotechnology research and development.  Its research has led to numerous patents and patent applications relating to diverse innovative technologies such as water purification, biodegradation management, and the use of D-tagatose for food and potentially medical and environmental applications.

**ANSWER**: Juniper lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 20 and, on that basis, denies them.

21.     Spherix has formed a Technology Advisory Board to identify and address market opportunities for innovative technology, including telecommunications technology.  Part of the purpose of the creation of the Technology Advisory Board is to reward and provide compensation to the inventors of the patents Spherix acquires.

**ANSWER**: Juniper lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 21 and, on that basis, denies them.

22.     Defendant Juniper is one of the world's largest manufacturers and sellers of routing and switching products for high-performance networks.  Juniper is headquartered in Sunnyvale, California, but has offices throughout the United States, including Arizona, Colorado, Connecticut, Florida, Georgia, Illinois, Kansas, Maryland, Massachusetts, Missouri, New Jersey, New York, North Carolina, Ohio, Oklahoma, Texas, Virginia and Washington, and the world, including Australia, China, India, Japan, Korea, Taiwan and Singapore in Asia and Belgium, Denmark, France, Germany, Italy, Switzerland and the United Kingdom in Europe.

**ANSWER**: Juniper admits that it has a place of business in Sunnyvale, California and other offices throughout the United States and overseas.  Except as expressly admitted herein, Juniper denies each and every allegation contained in paragraph 22 of the First Amended Complaint.

23.     On information and belief, for Juniper's fiscal year ending December 31, 2013, Juniper had revenues of over $2.24 billion for routers and $638 million for switches and an additional over $790 million for services.  Similar revenues were reported for Juniper's 2011 and 2012 fiscal years.  Juniper's routing and switching products and services represent a substantial majority of Juniper's total revenue for each of those years.

**ANSWER**: Juniper admits that for the fiscal year ending December 31, 2013, it had revenues of over $2.24 billion for routers, $639 million for switches, and $790 million for services.   Except as expressly admitted herein, Juniper denies each and every allegation contained in paragraph 23 of the First Amended Complaint.

24.     On information and belief, Juniper manufactures many of its products at facilities in China, Malaysia, Mexico and Taiwan, and then imports those products into the United States for sale and/or distribution.

**ANSWER**: Juniper denies each and every allegation contained in paragraph 24 of the First Amended Complaint.

25.     The scope of Juniper's infringement of the Asserted Patents has been and continues to be substantial.  The majority of Juniper's revenue from at least January 1, 2011 until the present is and has been generated by products and services implementing technology that infringes the Asserted Patents.  The most recently issued Asserted Patent, U.S. Patent No. 8,607,323, does not expire until August of 2023.

**ANSWER**: Juniper denies each and every allegation contained in paragraph 25 of the First Amended Complaint.

26.     Juniper manufactured, sold, offered for sale and/or imported the infringing technology with knowledge of at least some of the Asserted Patents and the relevance of those patents to Juniper's products and services, including Juniper's infringement thereof.

**ANSWER**: Juniper denies each and every allegation contained in paragraph 26 of the First Amended Complaint.

## INFRINGEMENT OF U.S. PATENT NO. RE40467

27.     On August 26, 2008, United States Letters Patent No. RE40467 ("the RE467 patent") for "Method and Apparatus for Managing the Flow of Data Within a Switching Device" was duly and legally issued to Randy Ryals, Jeffrey Prince, H. Earl Ferguson, Mike K. Noll and Derek H. Pitcher.  All rights and interest in the RE467 patent have been assigned to NNPT.  A true and correct copy of the RE467 patent is attached hereto as Exhibit A.

**ANSWER**: Juniper admits that what appears to be a copy of U.S. Patent No. RE40467

("the RE467 Patent") was attached as Exhibit A to the Complaint, that on the face of the patent,

the title is "Method and Apparatus for Managing the Flow of Data Within a Switching Device,"

that the named inventors are Randy Ryals, Jeffrey Prince, Earl Ferguson, Mike K. Noll and

Derek H. Pitcher, and that the date of issuance is identified as August 26, 2008.  Except as

expressly admitted herein, Juniper is without knowledge or information sufficient to form a

belief as to the truth of the allegations contained in paragraph 27 of the First Amended

Complaint and, on that basis, denies them.

28.     Upon information and belief, Juniper has infringed and continues to infringe the RE467 patent.  The infringing acts include at least the manufacture, sale and/or offer for sale of products (including, for example and without limitation, Juniper's M Series Routers) that are covered by one or more claims of the RE467 patent.  Juniper is liable for infringement of the RE467 patent pursuant to 35 U.S.C. § 271(a).

**ANSWER**: Juniper denies each and every allegation contained in paragraph 28 of the

First Amended Complaint.

29.     Juniper's acts of infringement have caused damage to Plaintiffs and Plaintiffs are entitled to recover from Juniper the damages sustained by Plaintiffs as a result of Juniper's wrongful acts in an amount subject to proof at trial.  Juniper's infringement of the RE467 patent continues to cause damage to Plaintiffs.

**ANSWER**: Juniper denies each and every allegation contained in paragraph 29 of the

First Amended Complaint.

30.     Upon information and belief, Juniper has had knowledge of the RE467 patent, and its relevance to Juniper's products and services, including Juniper's infringement thereof, since at least the Nortel patent auction.

**ANSWER**: Juniper denies each and every allegation contained in paragraph 30 of the First Amended Complaint.

31.     There is an objectively high likelihood that Juniper's actions constituted infringement of a valid patent, and the likelihood was either known or so obvious that it should have been known by Juniper.  Thus, given Juniper's knowledge of the RE467 Patent, stemming at least from the date of the Nortel patent auction, Juniper is engaging in willful infringement of the RE467 Patent, and is therefore liable for enhanced damages under 35 U.S.C. § 284 and for attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**ANSWER**: The Court has dismissed Spherix's claims of willful patent infringement in its March 30, 2015 Order, D.I. 21. Thus, no response is required.

## INFRINGEMENT OF U.S. PATENT NO. 6,578,086

32.     On June 10, 2003, United States Letters Patent No. 6,578,086 ("the '086 patent") for "Dynamically Managing the Topology of a Data Network" was duly and legally issued to Joseph Regan and Alfred Nothaft.  All rights and interest in the '086 patent has been assigned to NNPT.  A true and correct copy of the '086 patent is attached hereto as Exhibit B.

**ANSWER**: Juniper admits that what appears to be a copy of United States Patent No. 6,578,086 ("the '086 Patent") was attached as Exhibit B to the Complaint, that on the face of the patent, the title is "Dynamically Managing the Topology of a Data Network," that the named inventors are Joseph Regan and Alfred Nothaft, and that the date of issuance is identified as June 10, 2003.  Except as expressly admitted herein, Juniper is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 32 of the First Amended Complaint and, on that basis, denies them.

33.     Upon information and belief, Juniper has infringed and continues to infringe the '086 patent.  The infringing acts include at least the manufacture, sale and/or offer for sale of devices supporting/enabling Juniper's Q-Fabric (including, for example and without limitation, Q-Fabric routers and switches such as QFX3500, QFX3600 and QFX5100 switches), that are covered by one or more claims of the '086 patent.  Juniper is liable for infringement of the '086 patent pursuant to 35 U.S.C. § 271(a).

**ANSWER**: Juniper denies each and every allegation contained in paragraph 33 of the First Amended Complaint.

34.     Juniper's acts of infringement have caused damage to Plaintiffs and Plaintiffs are entitled to recover from Juniper the damages sustained by Plaintiffs as a result of Juniper's wrongful acts in an amount subject to proof at trial.  Juniper's infringement of the '086 patent continues to cause damage to Plaintiffs.

**ANSWER**: Juniper denies each and every allegation contained in paragraph 34 of the

First Amended Complaint.

35.     Upon information and belief, Juniper has had knowledge of the '086 patent, and its relevance to Juniper's products and services, including Juniper's infringement thereof, since at least the Nortel patent auction.

**ANSWER**: Juniper denies each and every allegation contained in paragraph 35 of the

First Amended Complaint.

36.     There is an objectively high likelihood that Juniper's actions constituted infringement of a valid patent, and the likelihood was either known or so obvious that it should have been known by Juniper.  Thus, given Juniper's knowledge of the '086 Patent, stemming at least from the date of the Nortel patent auction, Juniper is engaging in willful infringement of the '086 Patent, and is therefore liable for enhanced damages under 35 U.S.C. § 284 and for attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**ANSWER**: The Court has dismissed Spherix's claims of willful patent infringement in

its March 30, 2015 Order, D.I. 21. Thus, no response is required.

## INFRINGEMENT OF U.S. PATENT NO. 6,130,877

37.     On October 10, 2000, United States Letters Patent No. 6,130,877 ("the '877 patent") for "Rate Controlled Broadcast for Activation of Entities in Large Scale Data Networks" was duly and legally issued to Peter Chi-Kin Lee.  All rights and interest in the '877 patent have been assigned to NNPT.  A true and correct copy of the '877 patent is attached hereto as Exhibit C.

**ANSWER**: Juniper admits that what appears to be a copy of United States Patent No.

6,130,877 ("the '877 patent") was attached as Exhibit C to the Complaint, that on the face of the

patent, the title is "Rate Controlled Broadcast for Activation of Entities in Large Scale Data

Networks," that the named inventor is Peter Chi-Kin Lee, and that the date of issuance is

identified as October 10, 2000.  Except as expressly admitted herein, Juniper is without

knowledge or information sufficient to form a belief as to the truth of the allegations contained in

paragraph 37 of the First Amended Complaint and, on that basis, denies them.

38.     Upon information and belief, Juniper has infringed and continues to infringe the '877 patent.  The infringing acts include at least the manufacture, sale and/or offer for sale of devices running certain features of the JUNOS OS (including, for example and without limitation, Q-Fabric OSPF Routers), that are covered by one or more claims of the '877 patent. Juniper is liable for infringement of the '877 patent pursuant to 35 U.S.C. § 271(a).

**ANSWER**: Juniper denies each and every allegation contained in paragraph 38 of the

First Amended Complaint.

39.     Juniper's acts of infringement have caused damage to Plaintiffs and Plaintiffs are entitled to recover from Juniper the damages sustained by Plaintiffs as a result of Juniper's wrongful acts in an amount subject to proof at trial.  Juniper's infringement of the '877 patent continues to cause damage to Plaintiffs.

**ANSWER**: Juniper denies each and every allegation contained in paragraph 39 of the

First Amended Complaint.

40.     Upon information and belief, Juniper has had knowledge of the '877 patent, and its relevance to Juniper's products and services, including Juniper's infringement thereof, since at least the Nortel patent auction.

**ANSWER**: Juniper denies each and every allegation contained in paragraph 40 of the

First Amended Complaint.

41.     There is an objectively high likelihood that Juniper's actions constituted infringement of a valid patent, and the likelihood was either known or so obvious that it should have been known by Juniper.  Thus, given Juniper's knowledge of the '877 Patent, stemming at least from the data of the Nortel patent auction, Juniper is engaging in willful infringement of the '877 Patent, and is therefore liable for enhanced damages under 35 U.S.C. § 284 and for attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**ANSWER**:   The Court has dismissed Spherix's claims of willful patent infringement in

its March 30, 2015 Order, D.I. 21. Thus, no response is required.

### INFRINGEMENT OF U.S. PATENT NO. 7,664,123

42.     On February 16, 2010, United States Letters Patent No. 7,664,123 ("the '123 patent") for "Generalized Virtual Router" was duly and legally issued to Peter Ashwood Smith, Hamid Ouid-Brahim, Bilel Jamoussi and Donald Fedyk.  All rights and interest in the '123

patent have been assigned to NNPT.   A true and correct of the '123 patent is attached hereto as Exhibit D.

**ANSWER**: Juniper admits that what appears to be a copy of United States Patent No.

7,664,123 ("the '123 patent") was attached as Exhibit D to the Complaint, that on the face of the

patent, the title is "Generalized Virtual Router," that the named inventors are Peter Ashwood

Smith, Hamid Ould-Brahim, Bilel Jamoussi, and Donald Fedyk, and that the date of issuance is

identified as February 16, 2010.  Except as expressly admitted herein, Juniper is without

knowledge or information sufficient to form a belief as to the truth of the allegations contained in

paragraph 42 of the First Amended Complaint and, on that basis, denies them.

43.     Upon information and belief, Juniper has infringed and continues to infringe the '123 patent.  The infringing acts include at least the manufacture, sale and/or offer for sale of devices (including, for example and without limitation, the Juniper T-Series Core Routers, such as T320, T1600, T4000, and TX Matrix product families, such as TX Matrix and TX Matrix Plus), that infringe one or more claims of the '123 patent.  Juniper is liable for infringement of the '123 patent pursuant to 35 U.S.C. § 271(a).

**ANSWER**: Juniper denies each and every allegation contained in paragraph 43 of the

First Amended Complaint.

44.     Juniper has had knowledge of the '123 patent and its relevance to Juniper's products and services, including Juniper's infringement thereof, since at least July 18, 2012, when an examiner at the U.S. Patent & Trademark Office applied the '123 patent as prior art against the then-pending claims of U.S. Patent Application No. 12/710,164 (now U.S. Patent No. 8,687,629).  In addition, in 2013, Juniper cited the '123 patent as potentially relevant to the examiner at the PTO responsible for examining Juniper's U.S. Patent No. 8,560,600.

**ANSWER**: Juniper denies each and every allegation contained in paragraph 44 of the

First Amended Complaint.

45.     Juniper's acts of infringement have caused damage to Plaintiffs and Plaintiffs are entitled to recover from Juniper the damages sustained by Juniper as a result of Juniper's wrongful acts in an amount subject to proof at trial.  Juniper's infringement of the '123 patent continues to cause damage to Plaintiffs.

**ANSWER**: Juniper denies each and every allegation contained in paragraph 45 of the

First Amended Complaint.

46.     There is an objectively high likelihood that Juniper's actions constituted infringement of a valid patent, and the likelihood was either known or so obvious that it should have been known by Juniper.  Thus, given Juniper's knowledge of the '123 Patent, stemming at least from the date of the Nortel patent auction, Juniper is engaging in willful infringement of the '123 Patent, and is therefore liable for enhanced damages under 35 U.S.C. § 284 and for attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**ANSWER**:   The Court has dismissed Spherix's claims of willful patent infringement in

its March 30, 2015 Order, D.I. 21. Thus, no response is required.

### INFRINGEMENT OF U.S. PATENT NO. 8,607,323

47.     On December 10, 2013, United States Letters Patent No. 8,607,323 ("the '323 patent") for "Method for Providing Media Communication Across Firewalls" was duly and legally issued to Wei Yuan.  All rights and interest in the '323 patent have been assigned to NNPT.  A true and correct copy of the '323 patent is attached hereto as Exhibit E.

**ANSWER**: Juniper admits that what appears to be a copy of United States Patent No.

8,607,323 ("the '323 patent") was attached as Exhibit E to the Complaint, that on the face of the

patent, the title is "Method for Providing Media Communication Across Firewalls," that the

named inventor is Wei Yuan, and that the date of issuance is identified as December 10, 2013.

Except as expressly admitted herein, Juniper is without knowledge or information sufficient to

form a belief as to the truth of the allegations contained in paragraph 47 of the First Amended

Complaint and, on that basis, denies them.

48.     Upon information and belief, Juniper has infringed and continues to infringe the '323 patent.  The infringing acts include at least the manufacture, sale and/or offer for sale of devices (including, for example and without limitation, the J-series router and SIP ALG), that are covered by one or more claims of the '323 patent.  Juniper is liable for infringement of the '323 patent pursuant to 35 U.S.C. § 271(a).

**ANSWER**: Juniper denies each and every allegation contained in paragraph 48 of the

First Amended Complaint.

49.     Juniper's acts of infringement have caused damage to Plaintiffs and Plaintiffs are entitled to recover from Juniper the damages sustained by Plaintiffs as a result of Juniper's wrongful acts in an amount subject to proof at trial.  Juniper's infringement of the '323 patent continues to cause damage to Plaintiffs.

**ANSWER**: Juniper denies each and every allegation contained in paragraph 49 of the First Amended Complaint.

50.     Upon information and belief, Juniper has had knowledge of the '323 patent, and its relevance to Juniper's products and services, including Juniper's infringement thereof, since at least the Nortel patent auction.

**ANSWER**: Juniper denies each and every allegation contained in paragraph 50 of the First Amended Complaint.

51.     There is an objectively high likelihood that Juniper's actions constituted infringement of a valid patent, and the likelihood was either known or so obvious that it should have been known by Juniper.  Thus, given Juniper's knowledge of the '323 Patent, stemming at least form the date of the Nortel patent auction, Juniper is engaging in willful infringement of the '323 Patent, and is therefore liable for enhanced damages under 35 U.S.C. § 284 and for attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**ANSWER**:   The Court has dismissed Spherix's claims of willful patent infringement in its March 30, 2015 Order, D.I. 21. Thus, no response is required.

## PRAYER FOR RELIEF

Juniper denies each and every allegation contained in Spherix's prayer for Relief and further denies that Spherix is entitled to any relief against Juniper.

## DEMAND FOR A JURY TRIAL

Juniper admits that the First Amended Complaint sets forth a demand for a trial by jury. Juniper likewise demands a trial by jury on all issues so triable.

## <u>DEFENSES</u>

Further answering the First Amended Complaint, Juniper alleges as follows:

## FIRST DEFENSE
## (Non-infringement of the RE467,'086,'877,'123, and'323 Patents)

1.     Juniper has not infringed, and is not infringing, any claim of the RE467, '086, '877, '123, and '323 patents either literally or under the doctrine of equivalents.

**SECOND DEFENSE**
**(Invalidity of the RE467, '086, '877, '123, and '323 Patents)**

2.      The claims of the RE467, '086, '877, '123, and '323 patents are invalid for failure to meet one or more requirements of Title 35 of the United States Code, including but not limited to §§ 101, 102, 103, 112, 116, and/or 282.

**THIRD DEFENSE**
**(Equitable Estoppel)**

3.      Spherix's claims are barred in whole or in part by equitable estoppel.

4.      As detailed in Paragraphs 7 through 19 of the First Amended Complaint, Spherix's predecessor-in-interest of the Asserted Patents is Nortel Networks.

5.      Juniper previously executed a Purchase, Sale, and Support Agreement (the "Resale Agreement") with Nortel Networks regarding, without limitation or loss of generality, Juniper's M-Series Routers and JUNOS software.

6.      The original Resale Agreement with Nortel covering the M-Series Routers and JUNOS software was executed on May 30, 2001.  Nortel and Juniper extended the term of the Resale Agreement in June 2003, September 2003, January 2004, and September 2004.

7.      The business relationship between Nortel and Juniper covered at least the period from January 2002 to November 2008 and was evidenced by more than 1000 transactions.

8.      As part of the Resale Agreement, Juniper provided Nortel Networks with Product Documentation that included detailed descriptions of the covered products.

9.      The Resale Agreement explicitly gave Nortel the right to enforce its intellectual property rights against Juniper if it believed Juniper's products infringed its intellectual property rights.

10.     Specifically, the Resale Agreement stated, "Either Party shall have the right to terminate this Agreement should Nortel Networks or any of the Nortel Networks Companies sue Seller [Juniper] on the basis that the Products infringe Nortel Networks and/or Nortel Networks Companies intellectual rights."

11.     Nortel never sued Juniper on the Asserted Patents, or on any of its intellectual property rights.

12.     In addition to the Resale Agreement, Nortel and Juniper collaborated in mutual business opportunities beginning as early as 2001 and extending to at least 2009.

13.     By its silence regarding the Asserted Patents throughout its business relationship with Juniper, Nortel led Juniper to reasonably infer that the Asserted Patents would not be enforced against Juniper.

14.     During and after its business relationship with Nortel, Juniper continually invested in the development of the Accused Products.  As an example, Juniper developed its line of T-Series Routers as an expansion of the M-Series product line and continued to invest in and develop the T-Series products from 2002 through 2010.

15.     Spherix now asserts that Juniper's M-Series Routers, T-Series Routers, and JUNOS software infringe the Asserted Patents previously owned by Nortel.

16.     Due to its reliance on Nortel's silence regarding the Asserted Patents, Juniper will now be materially prejudiced if Spherix is allowed to proceed with its claims of infringement.

**FOURTH DEFENSE**
**(Laches)**

17.     Spherix's claims are barred or limited by laches.  Juniper incorporates the allegations of Paragraphs 3 through 16 here.

18.      As noted above, the Resale Agreement between Juniper and Nortel was executed in 2001, more than thirteen years ago.

19.      Juniper has since suffered material or economic prejudice from the delay in asserting the patents at issue in this case.

20.      Due to the unreasonable length of time that has passed since the Asserted Patents could have first been reasonably asserted against Juniper and the prejudice incurred as a result of the unreasonable delay, Spherix is now barred by the equitable doctrine of laches from asserting infringement against Juniper.

**FIFTH DEFENSE**
**(Waiver)**

21.      Spherix's claims are barred by waiver.

**SIXTH DEFENSE**
**(Prosecution History Estoppel)**

22.      Spherix's claims are barred by the doctrine of prosecution history estoppel.

**SEVENTH DEFENSE**
**(Failure to State a Claim)**

23.      Spherix's claims fail to state a claim upon which relief may be granted.

**EIGHTH DEFENSE**
**(Limitations on Damages and Costs)**

24.      Spherix's recovery for alleged infringement of the RE467, '086, '877, '123, and '323 patents, if any, is limited to any alleged infringement committed no more than six years prior to the filing of its Complaint, pursuant to 35 U.S.C. § 286.

25.      Spherix failed to provide adequate notice to Juniper of alleged infringement and is thus barred under 35 U.S.C. § 287 from recovering damages prior to the date of the filing of the Original Complaint.

26.     On information and belief, Spherix is barred in whole or in part from recovering damages under 35 U.S.C. § 287 because it and/or its licensees have not consistently marked products that allegedly practice the patents-in-suit.

27.     Plaintiff is barred by 35 U.S.C. § 288 from recovering costs associated with its action.

## NINTH DEFENSE
### (Unclean Hands)

28.     On information and belief, Spherix's claims for relief are barred in whole or in part by the equitable doctrine of unclean hands.

29.     On information and belief, Spherix's claim that Juniper products infringe the '123 patent (*see, e.g.,* Spherix's First Amended Complaint, D.I. 13 at ¶43) was made in bad faith.

30.      As documented in press releases available on Juniper's website, Juniper began the release and sale of its T-Series Core Routers as early as April 23, 2002. *See*, *e.g.*, Exhibit A, "Exemplary T-Series Press Releases."

31.     The patent application which resulted in the '123 patent was not filed until January 22, 2004.

32.     Thus, the early sales of the T-Series Core routers predate the priority date of the '123 patent and are invaliding prior art under at least 35 U.S.C. § 102.

33.     Spherix's allegations that the T-Series Core routers infringe the '123 patent indicate that it believes that the '123 patent claims are met by the T-Series Core routers.

34.     Therefore, on information and belief, Spherix's claims that Juniper products infringe the '123 patent have been made in bad faith, as Spherix knew that the '123 patent is invalid.

**TENTH DEFENSE**
**(Adequate Remedy at Law)**

35.     Spherix is not entitled to injunctive relief because any alleged injury to Spherix is not immediate or irreparable.  Spherix has an adequate remedy at law for any claims it can prove, and the balance of hardships does not warrant a remedy in equity, and the public interest would be disserved by a permanent injunction.

**ELEVENTH DEFENSE**
**(Lack of Standing)**

36.     Spherix lacks standing to assert infringement of the RE467, '086, '877, '123, and '323 patents because it did not have sufficient rights in the RE467, '086, '877, '123, and '323 patents at the time the suit was filed.

**TWELTH DEFENSE**
**(Failure to Join)**

37.     Spherix has failed to name or join an indispensable party or parties to the present action, including but not limited to certain persons or entities that may have an ownership interest in the RE467, '086, '877, '123, and '323 patents.

**ADDITIONAL DEFENSES RESERVED**

38.     Juniper reserves the right to assert additional affirmative defenses under Rule 8(c) of the Federal Rules of Civil Procedure, the Patent Laws of the United States, and any other defenses, at law or in equity, that may now exist or in the future be available based on discovery and further factual investigation in this case.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Juniper prays for judgment and seeks relief against Spherix as follows:

A.     That Spherix recover nothing by its First Amended Complaint;

B.      That Spherix's First Amended Complaint be dismissed with prejudice and each request for relief therein be denied;

C.      That the Court find that this is an exceptional case under 35 U.S.C. § 285 and award Juniper its reasonable attorneys' fees; and

D.      Granting Juniper such other and further relief as the Court may deem just and proper.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Julia Heaney*

_____
Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
jheaney@mnat.com

*Attorneys for Defendant*

OF COUNSEL:

Alan M. Fisch
Alicia Meros Carney
FISCH SIGLER LLP
5335 Wisconsin Avenue NW, 8th Floor
Washington, DC 20015
(202) 362-3600

April 14, 2015

9066217

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 14, 2015, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on April 14, 2015, upon the following in the manner indicated:

Joseph J. Bellew, Esquire                                                *VIA ELECTRONIC MAIL*
COZEN O'CONNOR
1201 North Market Street, Suite 1001
Wilmington, DE  19801
*Attorneys for Plaintiff*

Kerry B. McTigue, Esquire                                          *VIA ELECTRONIC MAIL*
Barry P. Golob, Esquire
Donald R. McPhail, Esquire
COZON O'CONNOR
The Army and Navy Building
1627 I Street, NW, Suite 1100
Washington, DC  20006
*Attorneys for Plaintiff*

*/s/ Julia Heaney*
_____
Julia Heaney (#3052)